**Slip Op. 05-41**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| |
|---|
| **UNITED STATES**, <br><br> Plaintiff, <br><br> v. <br><br> **JEAN ROBERTS OF CALIFORNIA, INC.**, <br><br> Defendant. |

**Before:  Timothy C. Stanceu, Judge**

**Court No. 03-00212**

[Defendant ordered to show cause why default judgment should not be entered against it for failure to answer Complaint in compliance with Court rules]

Decided:  March 30, 2005

*Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, *Patricia M. McCarthy*, Assistant Director, *Kenneth S. Kessler*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Erik Gantzel*, Assistant Chief Counsel, Bureau of Customs and Border Protection, of counsel, for plaintiff.

**OPINION AND ORDER**

Plaintiff United States commenced this action pursuant to 19 U.S.C. § 1592 (2000) against defendant, Jean Roberts of California, Inc. ("Jean Roberts") to collect a civil penalty for alleged negligence by Jean Roberts in the entry into the United States of knit acrylic/polyester blankets from Mexico.  Jean Roberts, a company incorporated in California, is, according to plaintiff, engaged in the business of manufacturing, importing, and distributing comforters, bedspreads, and other textile items.

Default was entered against Jean Roberts for failure to file, through counsel, an answer to the Complaint in compliance with the Rules of this Court. Pending before the court is Plaintiff's Application For Default Judgment ("Plaintiff's Application"). To ensure that Jean Roberts has a full and fair opportunity to retain legal counsel and defend itself in response to the allegations set forth in the Complaint, the court herein orders defendant to show cause why a default judgment should not be entered against it.

## I. BACKGROUND

The Complaint alleges essentially that during the period of August 29, 1997 through July 20, 1998, Jean Roberts violated 19 U.S.C. § 1592 in negligently causing thirty-four entries of knit acrylic/polyester blankets to be filed with the U.S. Customs Service ("Customs")[1] at the port of Otay Mesa, California by means of material false statements and/or material omissions. Compl. ¶¶ 3, 6. Plaintiff's principal allegation is that defendant's false, and negligently-made, description of the subject blankets as "woven" rather than "knit" on the entry documentation resulted in defendant's making an improper claim for preferential duty treatment under the North American Free Trade Agreement ("NAFTA") Implementation Act. Compl. ¶¶ 6, 7. Plaintiff further asserts that the false statements and/or omissions occurring as a result of defendant's negligence caused a loss of revenue of $121,187.73, calculated as the difference between the general duty rates and NAFTA preferential duty rates applying to the subject blankets. Compl. ¶¶ 6, 7, 9. This revenue loss, according to the Complaint, entitles the United States to collect a

---

[1] All relevant documents concerning the entries in this action originally were filed with the U.S. Customs Service. The U.S. Customs Service now is renamed the Bureau of Customs and Border Protection. *See Homeland Security Act of 2002*, Pub. L. 107-296 § 1502, 116 Stat. 2135 (2002); Reorg. Plan for the Dep't of Homeland Security, H.R. Doc. No. 108-32 (2003).

civil penalty in the amount of $242,375.46, which is twice the alleged loss of revenue.  Compl.

¶ 12.  The maximum penalty for a violation based on negligence under 19 U.S.C. § 1592 is the

lesser of the domestic value of the merchandise or "two times the lawful duties, taxes, and fees of

which the United States is or may be deprived."  19 U.S.C. § 1592(c)(3)(A).

A.  Administrative Penalty Proceeding

As specified in procedures established by 19 U.S.C. § 1592, Customs conducted an

administrative penalty proceeding before bringing an action in this court to collect an unpaid civil

penalty for alleged negligence by defendant in the entry of merchandise.  The administrative

proceeding began on November 29, 2000, the date on which Customs issued to Jean Roberts a

"Pre-Penalty Notice" pursuant to 19 U.S.C. § 1592(b)(1) stating, *inter alia*, that defendant "failed

to exercise reasonable care and competence throughout the importation process of thirty-four

consumption entries" filed at the port of Otay Mesa, California from August 29, 1997 through

July 20, 1998 containing knit acrylic/polyester blankets.  *See Pl.'s Notice of Filing of*

*Supplemental Doc. in Supp. of Pl.'s Application for Default J. in Resp. to the Ct.'s Telephonic*

*Req.* ("*Pl.'s Supplemental Doc.*") Ex. 1.  Like the Complaint in the case at bar, the Pre-Penalty

Notice alleged that Jean Roberts incorrectly described the subject blankets as "woven" on entry

documentation filed with Customs and that because the blankets actually were knit, not woven,

Jean Roberts was not eligible for the claimed NAFTA preferential tariff treatment.  The Pre-

Penalty Notice, citing a revenue loss of $121,508.52 in unpaid duties, notified Jean Roberts that

Customs was contemplating issuance of a civil penalty in the amount of $243,017.04, representing twice the alleged loss of revenue.[2]

Defendant did not submit a response to the Pre-Penalty Notice, and on February 26, 2001, Customs issued to Jean Roberts a Notice of Penalty in the amount of $121,508.52. This amount represented one time the loss of revenue, as then calculated by Customs.[3] Customs also made a demand for payment of the $121,508.52 in duties. Customs, on March 9, 2001, issued a demand for payment of duties on defendant's surety, American Contractors Indemnity. *See Pl.'s Application* Ex. A at 3; *Pl.'s Supplemental Application* Ex. 3 at 2. American Contractors Indemnity paid Customs the total amount of duty liability asserted by Customs. Customs continued the proceeding against Jean Roberts in an effort to collect the civil penalty.

Jean Roberts, through counsel, responded to the Penalty Notice on May 14, 2001, petitioning for complete cancellation of the penalty. *See Pl.'s Supplemental Doc.* Ex. 3. As its first argument, Jean Roberts claimed that the Mexican manufacturer of the blankets, Nova Textil Rivera Hermanos y Asociados, S.A. de C.V. ("Novatex"), had been responsible for preparing the import documentation for the imported blankets, a process in which it claimed not to have participated. *See id.* Contending that Novatex acted essentially as an agent of Jean Roberts, defendant argued that Customs should not allege negligence on the part of Jean Roberts unless Customs first found negligence on the part of Novatex. *See id.*

---

[2] An exhibit to the Complaint contains a worksheet recalculating the loss of revenue to be $121,187.73.

[3] Exhibit A to the Notice of Penalty is internally inconsistent in stating: "Monetary Consequences: . . . A civil, administrative penalty of $121,508.52, an amount equals [*sic*] to two times of the potential loss of revenue." *Pl.'s Supplemental Application* Ex. 2.

Defendant's second argument for cancellation of the penalty was that Novatex had reasonably relied upon a Customs ruling holding that the subject merchandise qualified for NAFTA preferential tariff treatment. In its petition, Jean Roberts argued that the ruling was issued in response to a ruling request submitted by counsel for its customs broker that erroneously, but in good faith, had informed Customs that the blankets were made of woven fabric. According to defendant, the error stemmed from a mis-communication that occurred when the counsel consulted with a Novatex employee.

In its decision in response to the petition, issued to Jean Roberts on April 19, 2002, Customs declined to mitigate its penalty claim of $121,508.52. The decision allowed Jean Roberts seven days to pay the $121,508.52 penalty and offered additional time if Jean Roberts would execute a two-year waiver of the statute of limitations. Jean Roberts did not pay the penalty, and Customs brought this collection action.

### B. Procedural History of the Penalty Collection Action in this Court

The Summons and Complaint commencing this case were served upon Jean Roberts on June 12, 2003. On July 2, 2003, Mr. Marvin Brownstein, President and Chief Executive Officer of Jean Roberts, attempting to appear *pro se* on behalf of Jean Roberts, filed a document entitled Answer to Complaint that included a one sentence, general denial of all allegations of the Complaint. On July 11, 2003, the Office of the Clerk of the Court of International Trade informed Mr. Brownstein that the Answer to Complaint was deemed filed and "advised that [his] corporation must be represented by counsel before [Jean Roberts] can proceed with this matter." *Pl.'s Application* Ex. A at 20 (emphasis omitted). The Clerk's Office further informed Mr. Brownstein that, pursuant to USCIT Rule 75(b), corporations, in order to make a proper

appearance, must be represented by licensed counsel admitted to practice before the Court. In a letter dated July 24, 2003, Mr. Brownstein informed the Clerk's Office that he attempted to secure counsel by contacting three attorneys in New York, all of whom required a $10,000 retainer and informed Mr. Brownstein that the defendant should "expect to spend over $50,000 to fight this case." *Id.* at 22. A statement of assets, liabilities and equity, as of March 31, 2003, was attached to the same correspondence, in which Mr. Brownstein claimed financial insolvency and requested a "public defender." *See id.* at 22-30. The Clerk's Office responded to Mr. Brownstein's request by letter dated August 5, 2003 informing him that public defenders are not available to represent corporations in civil matters and reiterating the requirements of USCIT Rule 75(b). *See id.* at 32. In a letter dated August 13, 2003 to which additional financial statements were attached, Mr. Brownstein reasserted that Jean Roberts does not have the financial means to defend the allegations pleaded in the Complaint. *See id.* at 33. The Clerk's Office responded by letter on August 19, 2003, advising defendant that failure to obtain counsel could result in judgment for the United States. *See id.* at 40. The Court has received no further correspondence from defendant.

On December 1, 2003, the United States filed Plaintiff's Request for Entry of Default on the grounds that Jean Roberts repeatedly failed to appear and defend the allegations pleaded in the Complaint. The Office of the Clerk of the Court of International Trade entered default on December 3, 2003 pursuant to USCIT Rule 55(a).[4]

---

[4] Rule 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as prescribed by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."

### C.  Plaintiff's Application for Default Judgment

On February 20, 2004, the United States, pursuant to USCIT Rule 55(b), applied for judgment by default against Jean Roberts for $242,375.46, an amount representing the statutory maximum penalty of two times the loss of revenue alleged by Customs in the Complaint.  *See Pl.'s Application* at 19, 25; *see also* 19 U.S.C. § 1592(c)(3)(A).  The penalty sought in the default judgment is nearly twice the amount of the penalty claim Customs asserted against Jean Roberts in the administrative proceeding conducted under 19 U.S.C. § 1592.

In its pending application for default judgment, the government argues that "Jean Roberts improperly relied upon the work of a foreign manufacturer to complete its entry documentation" relating to the subject merchandise, and that such reliance constitutes negligence pursuant to 19 U.S.C. § 1592.  *Pl.'s Application* at 8.  The government also maintains that the refusal of Jean Roberts to retain legal representation prevented plaintiff from "conducting discovery and expeditiously prosecuting the case."  *Id.* at 12.  Plaintiff further maintains that Jean Roberts willfully violated the Rules of the Court by "failing to comply with the initial disclosure requirements of USCIT Rule 26(a)(1) and other discovery and planning obligations that require the appearance of licensed counsel."  *Id.* at 14.  According to plaintiff, the negligent conduct of Jean Roberts and defendant's failure to obtain counsel in order to defend the allegations of the Complaint despite repeated warnings from the Clerk of the Court of International Trade justify entry of a default judgment.  *See id.* 8-9.

Plaintiff further argues that the application of factors articulated in *United States v. Complex Machine Works Co.*, 23 CIT 942, 949-50, 83 F. Supp. 2d 1307, 1313-14 (1999), to the facts of this case warrants imposing the maximum penalty for negligence, plus post-judgment

interest and costs. Plaintiff alleges that these factors include the failure of Jean Roberts to put

forth a good faith effort to comply with the customs laws of the United States during the

importation of the subject blankets, the public interest in deterring importers in the future from

submitting to Customs inaccurate documentation, and the degree of harm Jean Roberts caused to

the public by depriving the government of revenue and requiring the government to conduct an

"extensive investigation" and commence a civil prosecution. *See Pl.'s Application* at 21-23. The

United States also contends that the court should not consider as a mitigating factor the inability

of Jean Roberts to pay the penalty. *See id.* at 24.

## II. DISCUSSION

Rule 55(b) of the Rules of this Court provides as follows:

> When the plaintiff's claim against a defendant is for a sum certain or for a sum
> which can b[y] computation be made certain, the court upon request of the
> plaintiff and upon affidavit of the amount due shall enter judgment for that
> amount against the defendant, if the defendant has been defaulted for failure to
> appear and is not an infant or incompetent person.

USCIT R. 55(b). The Rule, however, provides that the court may "conduct such hearings or

order such references as it deems necessary and proper." *Id.* The court may do so, under the

Rule, "[i]f, in order to enable the court to enter judgment . . . it is necessary . . . to establish the

truth of any averment by evidence or to make an investigation of any other matter." *Id.* The

court construes Rule 55(b) in conjunction with Rule 55(c), which states that "[f]or good cause

shown, the court may set aside an entry of default and, if a judgment by default has been entered,

may likewise set it aside as prescribed by [USCIT] Rule 60(b)." USCIT R. 55(c). The court also

is cognizant of the "strong policy in favor of decisions on the merits and against resolution of

cases through default judgments." 10 *James W. Moore et al., Moore's Federal Practice* § 55.20

(3d ed. 2003).

Within twenty days of the date on which this collection action was commenced, Jean

Roberts filed a document entitled Answer to Complaint with the Court. Such document cannot,

however, answer to the allegations pleaded against Jean Roberts in the Complaint because it was

filed *pro se*.[5]  The Rules of the Court require that "each party . . . must appear through an attorney

authorized to practice before the court," providing an exception only for "an individual (not a

corporation, partnership, organization or other legal entity) appearing *pro se*." USCIT R. 75(b).

The Supreme Court, moreover, has stated that "[i]t has been the law for the better part of two

centuries . . . that a corporation may appear in the federal courts only through licensed counsel."

*Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993) (citations omitted).

At this point, the court cannot reach the conclusion that Jean Roberts willfully violated

the Rules of the Court. The court is not satisfied that Jean Roberts does not wish to retain legal

counsel or defend itself against the allegations of the Complaint. The court views the

defendant's attempt to reply to the pleadings in this action and its communications with the

Office of the Clerk of the Court of International Trade on the obtaining of counsel as acts

indicative of its desire to defend itself in this action. Accordingly, the court considers it

necessary and proper to provide defendant a final opportunity to secure legal counsel, so that

defendant may be afforded a full and fair opportunity to defend itself in this action. The court,

---

[5] In addition, the general denial that constituted defendant's answer did not meet the substance of the specific allegations in the Complaint. *See* USCIT R. 8(c) ("Denials shall fairly meet the substance of the averments denied.").

therefore, will grant to Jean Roberts one final opportunity to be represented by legal counsel eligible to file an appearance with this Court.

### III. CONCLUSION AND ORDER

In view of the requirement set forth by USCIT Rule 75(b), the guidance of the Supreme Court in *Rowland v. California Men's Colony*, 506 U.S. at 201-02, that a corporate defendant may appear in federal court only through licensed counsel, and the general disfavor accorded to default judgments, the court, pursuant to USCIT Rule 55(b), will grant defendant Jean Roberts one final opportunity to obtain legal representation and proceed with a defense in this action. The court is allowing defendant sixty days to obtain counsel and show cause why a default judgment should not be entered against it in this litigation. The court is taking this action to ensure that defendant has a full and fair opportunity to fulfill its desire to respond to the allegations in the Complaint. It is hereby

**ORDERED** that defendant, through licensed counsel admitted to practice in this Court, and by May 31, 2005, will show cause why a default judgment should not be entered.

      /s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: March 30, 2005